**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **SPIRIT AIRLINES, INC.**, *et al.*, | **Case No. 24-11988 (SHL)** |
| Debtors.[1] | **Jointly Administered** |

## GLOBAL NOTES AND STATEMENTS REGARDING THE DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

Spirit Airlines, Inc. and its subsidiaries (collectively, the "**Debtors**" or the "**Company**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") pending in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), have prepared their respective unaudited schedules of assets and liabilities (collectively, as may be amended from time to time, the "**Schedules**") and unaudited statements of financial affairs (collectively, as may be amended from time to time, the "**Statements**" and, together with the Schedules, the "**Schedules and Statements**") in accordance with section 521 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), with the assistance of their legal and financial advisors.

These Global Notes and Statements Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs (the "**Global Notes**") pertain to, are incorporated by reference in, and comprise an integral part of, all the Schedules and Statements, and should be referred to and considered in connection with any review of the Schedules and Statements.[2]

### Disclaimers and Reservation of Rights

The Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("**GAAP**") or any other foreign jurisdiction, as applicable, nor are they intended to be fully reconciled with the financial statements of each Debtor. Additionally, the Schedules and Statements contain unaudited

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Spirit Airlines, Inc. (7023); Spirit Finance Cayman 1 Ltd. (7020); Spirit Finance Cayman 2 Ltd. (7362); Spirit IP Cayman Ltd. (4732); and Spirit Loyalty Cayman Ltd. (4752). The Debtors' mailing address is 1731 Radiant Drive, Dania Beach, FL 33004.

[2] The Global Notes supplement and are in addition to any specific notes contained in each Debtor's Schedules or Statements. The fact that the Debtors prepared a Global Note with respect to any individual Debtor's Schedules and Statements and not to those of another should not be interpreted as a decision by the Debtors to exclude the applicability of such Global Note to any other Debtors' Schedules and Statements, as appropriate. Disclosure of information in one Schedule, one Statement, or an exhibit or attachment to a Schedule or Statement, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedule, Statement, exhibit, or attachment. In the event that the Schedules and Statements differ from the Global Notes, the Global Notes shall control.

information that is subject to further review, potential adjustment. Although the Debtors and their advisors made reasonable efforts to ensure that the Schedules and Statements are as accurate and complete as possible under the circumstances and based on information available at the time of preparation, there can be no assurance that the Schedules and Statements are complete or accurate. Subsequent information or discovery may result in material changes to the Schedules and Statements, and inadvertent errors, inaccuracies, or omissions may have occurred or may occur in the future. The Schedules and Statements and Global Notes should not be relied upon for information relating to the Company's current or future financial condition or performance.

Unlike the Company's consolidated financial statements, the Schedules and Statements reflect the assets and liabilities of each separate Debtor, except where otherwise indicated. The Schedules and Statements include information derived from the Debtors' books and records. The information presented has been reported in the Schedules and Statements in the good-faith belief the information provided is responsive and accurate.

Moreover, given, among other things, the uncertainty surrounding the collection and ownership of certain assets and the valuation and nature of certain liabilities, to the extent a Debtor shows more assets than liabilities, it is not an admission that such Debtor was solvent as of the Petition Date (as defined below) or at any other time. Likewise, to the extent a Debtor shows more liabilities than assets, it is not an admission that such Debtor was insolvent as of the Petition Date or at any other time.

The Schedules and Statements have been signed by Fred Cromer, Chief Financial Officer of the Debtors. Accordingly, in reviewing and signing the Schedules and Statements, Mr. Cromer necessarily relied upon the efforts, statements, and representations of the Debtors' other personnel and professionals. Mr. Cromer has not (and could not have) personally verified the accuracy of each such statement and representation, including statements and representations concerning amounts owed to creditors, classification of such amounts, and their addresses. Except as expressly required by the Bankruptcy Code, the Debtors, their officers, employees, agents, attorneys, and financial and other advisors expressly do not undertake any obligation to update, modify, revise, or recategorize any information provided in the Schedules and Statements or to notify any third party should the information be updated, modified, revised, or recategorized.

The Debtors reserve all rights to amend the Schedules and Statements from time to time, in any and all respects, as they deem necessary or appropriate. The Debtors reserve all rights to dispute, and to assert setoff rights, counterclaims, crossclaims, and defenses to, any claim[3] reflected in the Schedules or Statements on any grounds, including amount, liability, priority, status, or classification, and to otherwise subsequently designate any claim as "contingent," "unliquidated," or "disputed." Listing a claim does not constitute an admission of liability by the Debtors. The listing of any contract, agreement, or instrument on the Schedules and Statements does not constitute an admission by the Debtors as to the validity of any such contract, agreement, or instrument. Nor does the omission of a contract, agreement or instrument from the Schedules or Statements constitute an admission that such omitted contract, agreement, or instrument is not an executory contract or unexpired lease. The Debtors reserve the right to dispute the effectiveness

---

[3] As used herein, "claim" shall have the meaning ascribed to it in section 101(5) of the Bankruptcy Code.

of any contract, agreement, or instrument listed on or omitted from the Schedules and Statements or to amend the Schedules and Statements at any time.

Nothing contained in the Schedules and Statements constitutes a waiver of the Debtors' rights or an admission of any kind with respect to these chapter 11 cases, including any claims against the Debtors, any rights or claims of the Debtors against any third party, any issues involving substantive consolidation, equitable subordination, or defenses or causes of action arising under chapter 5 of the Bankruptcy Code or any other relevant applicable bankruptcy or non-bankruptcy laws to recover assets or avoid transfers. Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this section. Nothing contained in the Schedules and Statements or the Global Notes is intended as, or should be construed as, an admission or stipulation of the validity of any claim against the Debtors, any assertion made therein or herein, or a waiver of the Debtors' rights to dispute any claim or assert any cause of action or defense against any party.

### Description of the Cases and "As Of" Information Date

On November 18, 2024, Debtor Spirit Airlines, Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On November 25, 2024, Spirit Airlines, Inc.'s subsidiaries (collectively, the "**Cayman Debtors**") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.[4] The Debtors remain in possession of their property and continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b), as ordered by the Court [ECF No. 121]. The Debtors have not been substantively consolidated and accordingly, each Debtor has filed its own Schedules and Statements.

On November 29, 2024, the United States Trustee for the Southern District of New York appointed an Official Committee of Unsecured Creditors pursuant to section 1102 of the Bankruptcy Code [ECF No. 133]. No request has been made for the appointment of a trustee or examiner.

Reference is made to the *Joint Chapter 11 Plan of Reorganization of Spirit Airlines, Inc. and its Debtor Affiliates* [ECF No. 247] and the related disclosure statement [ECF No. 270] (including all appendices, exhibits, schedules, and supplements, and as altered, amended, supplemented, or otherwise modified from time to time in accordance therewith, the "**Plan**" and "**Disclosure Statement**," respectively). On December 17, 2024, the Bankruptcy Court entered an order [ECF No. 246] (the "**Scheduling Order**") that conditionally approved the Disclosure Statement as containing adequate information, in compliance with section 1125(a) of the Bankruptcy Code, for the purpose of soliciting votes on the Plan. Pursuant to the Scheduling Order, a combined hearing on the final approval of the Disclosure Statement and confirmation of the Plan will commence on January 29, 2025, at 11:00 a.m. (prevailing Eastern Time), before the

---

[4] As used herein, "**Petition Date**" refers to the date of commencement of the Chapter 11 Cases with respect to the applicable Debtor.

Honorable Sean H. Lane, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601.

Copies of the Plan, Disclosure Statement, and other documents publicly filed in the Chapter 11 Cases can be accessed free of charge at https://dm.epiq11.com/SpiritGoForward.

The asset information provided herein, except as otherwise noted, represents the asset data of each Debtor as of October 31, 2024, the date of the Debtors' month end closure to their balance sheet, and the liability data of each Debtor as of the close of business on the Petition Date. Foreign currencies are converted to U.S. dollars by the Debtors' internal accounting software.[5]

### Methodology and General Disclosures Applicable to Schedules and Statements

1.    **Net Book Value of Assets**. Unless otherwise indicated, the Debtors' Schedules and Statements reflect net book values as of October 31, 2024. For the avoidance of doubt, nothing contained in the Schedules and Statements is indicative of the Debtors' enterprise value. Book values of assets prepared in accordance with GAAP generally do not reflect the current performance of the assets and may differ materially from the actual value and/or performance of the underlying assets. As such, the value listed in the Schedules and Statements cannot be, and was not, used to determine the Debtors' enterprise valuation.

2.    **Recharacterization and Classifications**. The Debtors used reasonable efforts to correctly characterize, classify, categorize, and designate the claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements. However, the Debtors may have improperly characterized, classified, categorized, designated, included, or omitted certain items. Accordingly, the Debtors reserve all rights to recharacterize, reclassify, recategorize, redesignate, add, or delete items reported in the Schedules and Statements at a later time as deemed necessary or appropriate, including whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired post-petition.

3.    **Classifications**. Listing a claim on Schedule D as "secured," a claim on Schedule E/F as "priority" or "unsecured," or a contract on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant or contract counterparty or a waiver of the Debtors' rights to recharacterize or reclassify such claim or contract.

4.    **Claims Description**. Any failure to designate a claim in the Schedules and Statements as "contingent," "unliquidated," or "disputed" does not constitute an admission by the Debtors that such claim or amount is not "contingent," "unliquidated," or "disputed."

5.    **Estimates and Assumptions**. The preparation of the Schedules and Statements required the Debtors to make reasonable estimates and assumptions with respect to the reported amounts, including amounts of assets and liabilities, the amount of contingent assets and contingent liabilities on the date of filing the Schedules and Statements, and the reported amounts

---

[5] NTD: Client to provide any additional detail necessary on exchange rates used in reporting.

of revenues and expenses during the applicable reporting periods. Actual results may differ materially from such estimates. The Debtors reserve all rights to amend the reported amounts of assets and liabilities, contingent assets and contingent liabilities, and revenues and expenses to reflect changes in those estimates or assumptions.

6.     **Causes of Action**. Despite their reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action (filed or potential) against third parties as assets in their Schedules and Statements, including avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets. The Debtors reserve all rights with respect to any cause of action (including avoidance actions), controversy, right of setoff, crossclaim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract, in tort, in law, or in equity, or pursuant to any other theory of law (collectively, "**Causes of Action**") they may have, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any claims or Causes of Action or in any way prejudice or impair the assertion of such claims or Causes of Action.

7.     **Intellectual Property Rights**. Exclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated, or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated, or otherwise have not expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. The Debtors used reasonable efforts to attribute intellectual property to the rightful Debtor owner; however, in some instances, intellectual property owned by one Debtor may, in fact, be owned by another. Accordingly, the Debtors reserve all rights with respect to the legal status of any and all intellectual property rights.

8.     **Insiders**. In circumstances where the Schedules and Statements require information regarding "insiders," the relevant Debtor has included information with respect to the individuals and entities that the Debtor believes may be included in the definition of "insider" set forth in section 101(31) of the Bankruptcy Code during the relevant time periods. Such individuals may no longer serve in such capacities. Persons and entities listed as "insiders" have been included for informational purposes only and their inclusion shall not constitute an admission that those entities or persons are insiders for purposes of section 101(31) of the Bankruptcy Code. The listing of an entity or person as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed as an admission of any fact, right, claim, or defense and all such rights, claims, and defenses are hereby expressly reserved. Information regarding the individuals listed as insiders in the Schedules and Statements has been included for informational purposes only and such information may not be used for any purpose, including to determine (a) control of any Debtor, (b) the extent to which any individual exercised management responsibilities or functions, (c) corporate decision-making authority over any Debtor, or (d) whether such individual

could successfully argue that he or she is not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability. In addition, the Debtors used the best information available to them to determine the list of former directors and officers reflected in the Schedules and Statements, and reserve all rights to modify or amend such list.

9. **Basis of Presentation**. For financial reporting purposes, the Debtors ordinarily prepare consolidated financial statements. Combining the assets and liabilities set forth in the Debtors' Schedules and Statements would result in amounts that would be substantially different from financial information that would be prepared on a consolidated basis under GAAP. Therefore, the Schedules and Statements do not purport to represent financial statements prepared in accordance with GAAP or any other generally accepted accounting principles of foreign jurisdictions, as applicable, nor are they intended to fully reconcile to the financial statements prepared by the Debtors. Accordingly, the totals listed in the Schedules will likely differ, at times materially, from the consolidated financial reports prepared by the Debtors for financial reporting purposes or otherwise. The Schedules and Statements are not intended to be fully reconciled with the financial statements of each Debtor.

10. **Confidential or Sensitive Information**. There may be instances in the Schedules and Statements where the Debtors deemed it necessary or appropriate to redact from the public record information such as names, addresses, or amounts. Generally, the Debtors have used this approach because of an agreement between the Debtors and a third party, local restrictions on disclosure, concerns about the confidential or commercially sensitive nature of certain information, or concerns for the privacy of an individual. Furthermore, by order of the Bankruptcy Court [ECF No. 153], personal identifying information, such as mailing addresses of individuals, has been redacted from the Schedules and Statements.

11. **Duplication**. Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in multiple parts of the Statements and Schedules. To the extent these disclosures would be duplicative, the Debtors endeavored to only list such assets, liabilities, and prepetition payments once.

12. **Executory Contracts**. Although the Debtors used reasonable efforts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so. Accordingly, the Debtors reserve all rights with respect to the named parties of any and all executory contracts, including the right to amend Schedule G.

13. **Umbrella or Master Agreements**. Contracts listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors. Where relevant, such agreements may have been listed in the Schedules and Statements only of the Debtor that signed the original umbrella or master agreement.

14. **Leases**. The Debtors excluded from the Schedules and Statements the future obligations of any capital or operating leases. To the extent that there was an amount outstanding as of the Petition Date, the creditor has been included on Schedule F of the Schedules.

15. **Valuation**. In many instances, current market valuations are not maintained by or readily available to the Debtors. It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate resources for the Debtors to obtain current market valuations of all of their assets. Accordingly, unless otherwise indicated, net book values as of October 31, 2024 are reflected on the Schedules and Statements. Exceptions to this include operating cash and certain other assets. Operating cash is presented at bank balance as of the Petition Date. Certain other assets, such as investments in subsidiaries and other intangible assets, are listed as undetermined amounts, as the net book values may differ materially from fair market values. Amounts ultimately realized may vary from net book value (or other value so ascribed) and such variance may be material. Accordingly, the Debtors reserve all rights to amend, adjust, supplement, or otherwise modify the value of each asset set forth herein. In addition, the amounts shown for total liabilities exclude items identified as "unknown" or "undetermined," and, thus, ultimate liabilities may differ materially from those stated in the Schedules and Statements. Assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in the Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value. The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any of the Debtors' rights with respect to such asset.

16. **Property and Equipment**. Unless otherwise indicated, owned property and equipment are stated at net book value. The Debtors may lease furniture, fixtures, and equipment from certain third-party lessors. To the extent possible, any such leases are set forth in the Schedules and Statements. Nothing in the Schedules and Statements is or shall be construed as an admission as to the determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect thereto.

17. **Undetermined Amounts**. The description of an amount as "unknown," "undetermined," "disputed," "contingent," or "unliquidated" is not intended to reflect upon the materiality of such amount.

18. **Unliquidated Amounts**. Amounts that the Debtors could not fairly or readily quantify are scheduled as "unliquidated."

19. **Totals**. All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements. To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total. To the extent a Debtor is a guarantor of debt held by another Debtor, the amounts reflected in the Schedules are inclusive of each Debtor's guarantor obligations.

20. **Allocation of Liabilities**. The Debtors attempted to allocate liabilities between the prepetition and post-petition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and post-petition periods may change, potentially materially.

21. **503(b)(9) Claims**. The liabilities listed on the Schedules do not reflect any analysis of claims under section 503(b)(9) of the Bankruptcy Code. Accordingly, the Debtors reserve all

7

rights to dispute or challenge the validity of any asserted claims under section 503(b)(9) of the Bankruptcy Code or the characterization of the structure of any such transaction or any document or instrument related to any creditor's claim.

22.     **Court Orders**.  Pursuant to certain "first day" orders entered by the Bankruptcy Court in the Chapter 11 Cases (collectively, the "**First Day Orders**"), the Debtors are authorized (but not directed) to pay or otherwise satisfy various prepetition claims, including those related to employees, lienholders, customer obligations, vendors, taxes and fees, and trade.  Accordingly, these liabilities may have been or may be satisfied in accordance with such orders and therefore generally are not listed in the Schedules and Statements.  Regardless of whether such claims are listed in the Schedules and Statements, to the extent such claims are paid pursuant to an order of the Bankruptcy Court (including the First Day Orders), the Debtors reserve all rights to amend or supplement the Schedules and Statements or object to scheduled amounts or proofs of claim as deemed necessary or appropriate, including to avoid overpayment of or duplicate payments for any such liabilities.  Nothing contained herein shall alter the rights of any party in interest to contest a payment made pursuant to an order of the Bankruptcy Court where such order preserves such right.

23.     **Other Paid Claims**.  To the extent the Debtors have reached any post-petition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Schedules and Statements or any claims filed in connection therewith, and shall be enforceable by all parties, subject to any necessary Bankruptcy Court approval (if needed).

24.     **Credits and Adjustments**.  The claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may either (a) not reflect credits, allowances, or other adjustments due from such creditors to the Debtors or (b) be net of accrued credits, allowances, or other adjustments that are actually owed by a creditor to the Debtors on a post-petition basis on account of such credits, allowances, or other adjustments earned from prepetition payments and post-petition payments, if applicable.  The Debtors reserve all rights with regard to such credits, allowances, and other adjustments, including the right to assert claim objections and other defenses with respect thereto.

25.     **Intercompany Claims**.  Receivables and payables among and between the Debtors are reported on Statement 4 per the Debtors' unaudited books and records.  As described more fully in the *Motion of the Debtor for Entry of Interim and Final Orders (I) Authorizing (A) the Debtors to Maintain their Existing Cash Management System, Bank Accounts, and Business Forms, (B) the Debtors to Open and Close Bank Accounts, and (C) Financial Institutions to Administer the Bank Accounts and Honor and Process Related Checks and Transfers, (II) Waiving Deposit and Investment Requirements, and (III) Allowing Intercompany Transactions and Affording Administrative Expense Priority to Post-Petition Intercompany Claims* [ECF No. 7] (the "**Cash Management Motion**"), the Debtors engage in a range of intercompany transactions in the ordinary course of business.  The Bankruptcy Court granted the Cash Management Motion and authorized the Debtors authority to continue engaging in intercompany transactions in the ordinary course of business subject to certain limitations.  *See* ECF Nos. 46 and 273.  Thus, intercompany balances as of the Petition Date, as set forth on Statement 4 may not accurately reflect current positions.  The Cayman Debtors do not maintain separate financial statements from Debtor Spirit Airlines, Inc. and are not required to assign a value to intercompany receivables and payables

8

pursuant to GAAP or the provisions of applicable securities laws. Accordingly, these amounts are not reported on Schedule A/B and Schedule E/F. Intercompany cash transfers, for which the Debtors maintain records, are reported on Statement 4, as discussed herein.

The listing of any amounts with respect to such receivables and payables is not, and should not be construed as, an admission of the characterization of such balances as debt, equity, or otherwise or an admission as to the validity of such receivables and payables. For the avoidance of doubt, the Debtors reserve all rights, claims, and defenses in connection with any and all intercompany receivables and payables, including with respect to the characterization of intercompany claims, loans, and notes. Without limiting the generality of the foregoing, certain intercompany receivables and payables among and between the Debtors have been consolidated and netted in the Debtors' books and records. Such treatment is not, and should not be construed as, an admission or conclusion of the Debtors regarding the allowance, classification, characterization, amount, validity, or priority of any such intercompany receivables and payables or the validity of any netting or offsets per the Debtors' books and records. The Debtors take no position in the Schedules and Statements as to whether any such amounts would be allowed as a claim or an interest, or not all allowed at all. The listing of these amounts is not necessarily indicative of the ultimate recovery, if any, on any intercompany asset account or the impairment or claim status of any intercompany liability account. The Debtors reserve all rights to later change the amounts, characterization, classification, categorization, or designation of intercompany accounts reported in the Schedules and Statements.

In addition, certain of the Debtors act on behalf of other Debtors. Reasonable efforts have been made to indicate the ultimate beneficiary of a payment or obligation. Whether a particular payment or obligation was incurred by the entity actually making the payment or incurring the obligation is a complex question of applicable non-bankruptcy law, and nothing herein constitutes an admission that any Debtor entity is an obligor with respect to any such payment. The Debtors reserve all rights to reclassify any payment or obligation as attributable to another entity and all rights with respect to the proper accounting and treatment of such payments and liabilities.

As more fully described in the Cash Management Motion, the Debtors recorded numerous intercompany transactions in their books and records each month, including cash transfers and journal entries. Instead of listing each of these numerous transactions and entries in the Statements and Schedules for each month, the Debtors included monthly balances and net activity for the one year prior to the Petition Date. In addition, the Debtors separately listed any intercompany cash payments, which transactions are also recorded in the net monthly activity listing in the Debtors' books and records.

26. **Guarantees, Indemnifications, and Other Secondary Liability Claims**. The Debtors used reasonable efforts to locate and identify guarantees, indemnifications, and other secondary liability claims (collectively, "**Guarantees**") in their executory contracts, unexpired leases, secured financings, debt instruments, and other agreements. Where such Guarantees have been identified, they have been included in the relevant Schedule G and Schedule H for the Debtor or Debtors affected by such Guarantees. However, certain Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements may have been inadvertently omitted.

27.     **Claims of Third-Party Related Entities**.  While the Debtors used reasonable efforts to properly classify each claim listed in the Schedules as being either determined or undetermined, disputed or undisputed, liquidated or unliquidated, and contingent or noncontingent, the Debtors were unable to fully reconcile all payments made to certain third parties and their related entities on account of the Debtors' obligations thereto.  Therefore, to the extent that a Debtor classified its estimate of claims of a creditor as disputed, all claims of such creditor's affiliates listed in the Schedules and Statements shall similarly be considered disputed, whether or not they are designated as such.

28.     **Excluded Assets and Liabilities**.  The Debtors excluded certain categories of assets, tax accruals, and liabilities from the Schedules and Statements, including:  certain deferred charges, accounts, or reserves recorded only for purposes of complying with the requirements of GAAP; deferred tax assets and liabilities; goodwill and other intangibles; deferred revenue accounts; and certain accrued liabilities (*e.g.*, accrued salaries and employee benefits).  The Debtors also have excluded rejection damages claims of counterparties to executory contracts and unexpired leases that may or may not be rejected, to the extent such damage claims exist.  In addition, and as set forth herein, the Debtors may have excluded amounts for which they have been granted authority to pay pursuant to a First Day Order or other order of the Bankruptcy Court.  Also, certain immaterial assets and liabilities may have been excluded.

29.     **Liens**.  The inventories, property, and equipment listed in the Schedules and Statements are presented without consideration of any mechanic's, materialmen, or other liens that may attach (or have attached) to such inventories, property, and equipment, and the Debtors reserve all rights with respect to such liens.

30.     **Currency**.  Unless otherwise indicated, all amounts are reflected in U.S. dollars.

31.     **Setoffs**.  The Debtors routinely take and are subject to setoffs and other similar rights during the ordinary course of business, including in connection with intercompany transactions, pricing discrepancies, refunds, and disputes between the Debtors and various third parties.  These setoffs and other similar rights are consistent with the ordinary course of business in the Debtors' industry and are not tracked separately.  Therefore, although such setoffs and other similar rights may have been accounted for when certain amounts were included in the Schedules, they are not independently accounted for and, as such, may be excluded from the Schedules.  In addition, some amounts listed in the Schedules and Statements may have been affected by setoffs or nettings by third parties of which the Debtors are not yet aware.  The Debtors reserve all rights to challenge any setoff and recoupment rights that may be asserted.

## Specific Notes and Disclosures Regarding the Schedules

1.     **Schedule A/B, Part 1 – Cash and Cash Equivalents**.  Details with respect to the Debtors' cash management system and bank accounts are provided in the Cash Management Motion.  **The Debtors' cash balances are listed as of November 18, 2024, at bank balances.**  Debtors Spirit Loyalty Cayman Ltd. and Spirit IP Cayman Ltd. jointly own certain bank accounts.  Where applicable, the Debtors reflected the applicable cash balances on the Schedules of Debtor Spirit Loyalty Cayman Ltd.

2.        **Schedule A/B, Part 3 – Accounts Receivable, Item 11**.  The Debtors' reported accounts receivable include amounts that may be uncollectible.  Notwithstanding the foregoing, the Debtors used reasonable efforts to deduct doubtful or uncollectible accounts.  The Debtors are unable to determine with certainty what amounts will actually be collected.

3.        **Schedule A/B, Part 4 – Investments; Non-Publicly Traded Stock and Interests in Incorporated and Unincorporated Businesses, including any Interest in an LLC, Partnership, or Joint Venture**.  Ownership interests in subsidiaries, partnerships, joint ventures, and investments in non-publicly traded securities have been listed in Schedule A/B, Part 4, as undetermined amounts, because the fair market value of such ownership is dependent on numerous variables and factors and may differ significantly from their net book value.

4.        **Schedule A/B, Part 7 – Office Furniture, Fixtures, and Equipment; and Collectibles**.  Dollar amounts are presented net of accumulated depreciation and other adjustments.

5.        **Schedule A/B, Part 8 – Machinery, Equipment, and Vehicles**.  For those Debtors that own machinery, equipment and vehicles, dollar amounts are presented net of accumulated depreciation and other adjustments.  Due to the volume, the individual fixed asset schedules have not been included in Schedule A/B, Part 8.

6.        **Schedule A/B, Part 9 – Real Property**.  For those Debtors that own real property, such owned real estate is reported at book value, net of accumulated depreciation.  Any buildings and land improvements are listed on Schedule A/B, Part 9, independent of whether the real property to which the building or land improvement is connected is Debtor-owned property.  The Debtors may have listed certain assets as real property when such assets are in fact personal property, or the Debtors may have listed certain assets as personal property when such assets are in fact real property.  The Debtors reserve all rights to recategorize and recharacterize such asset holdings.

7.        **Schedule A/B, Part 10 – Intangibles and Intellectual Property, Items 59-66**.  The Debtors review goodwill and other intangible assets having indefinite lives for impairment annually or when events or changes in circumstances indicate the carrying value of these assets might exceed their current fair values.  Given the chapter 11 filing, results from an impairment test were unavailable at the time that the Schedules and Statements were prepared, and therefore several of the Debtors' intangible asset values may be listed as undetermined.  The Debtors do not have any goodwill.  The Debtors report intellectual property assets as net book value based on the Debtors' books and records whenever applicable.  The exclusion of listing similar assets at additional Debtors should not be construed as an admission that other Debtors do not possess similar assets.][6]

8.        **Schedule A/B, Part 11 – All Other Assets**.  Dollar amounts are presented net of impairments and other adjustment.

---

[6] NTD:  Client to confirm whether this note is applicable.

(a)     *Item 72 – Tax Refunds and Unused Net Operating Losses (NOLs)*.  The Debtors may receive refunds for sales and use tax at various times throughout their fiscal year.  As of the Petition Date, however, certain of these amounts are unknown to the Debtors and, accordingly, may not be listed on Schedule A/B.  Additionally, the Debtors may be entitled to apply certain net operating losses or other tax attributes.  As of the Petition Date, the value of these tax attributes is unknown to the Debtors and accordingly is described as such on Schedule A/B.

(b)     *Item 73 – Interests in Insurance Policies or Annuities*.  A list of the Debtors' insurance policies and related information is available in the *Motion of the Debtor for Entry of Interim and Final Orders Authorizing (I) the Debtors to (A) Continue and Renew Their Liability, Property, Casualty, Surety Bond, and Other Corporate Insurance Programs, and Honor All Obligations in Respect Thereof and (B) Enter Into New Premium Financing Agreements and (II) Financial Institutions to Honor and Process Related Checks and Transfers* [ECF No. 12].

(c)     *Items 74 and 75 – Causes of action against third parties (whether or not a lawsuit has been filed) and other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtors and rights to set off claims*.  The Debtors attempted to list known causes of action and other claims.  Potential preference actions and fraudulent transfer actions were not listed because the Debtors did not complete an analysis of such potential claims.  The Debtors' failure to list any cause of action, claim, or right of any nature is not an admission that such cause of action, claim, or right does not exist, and should not be construed as a waiver of such cause of action, claim, or right.

(d)     *Item 77 – Other property of any kind not already listed.*  The Debtors indicated that intercompany payables and receivables have unknown values.  The Debtors are not required to assign a value to these receivables pursuant to GAAP or the provisions of applicable securities laws.  Accordingly, their amounts are not readily determinable.  Cash transfers between certain Debtors are reflected in the Statements, Part 2, Question 4.

(e)     *Executory Contracts and Unexpired Leases*.  The Debtors listed their executory contracts and unexpired leases on Schedule G.  The Debtors reserve all rights with respect to any and all executory contracts and unexpired leases, including whether such agreements are or are not executory contracts and the right to amend Schedule G.

9.      **Schedule D – Creditors Who Have Claims Secured by Property**.  Except as otherwise agreed pursuant to a stipulation or order entered by the Bankruptcy Court, the Debtors reserve their rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset for the benefit of a secured creditor listed on a Debtor's Schedule D.  Moreover, although the Debtors may have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the nature or structure of any such transaction or any document or instrument (including without limitation, any intercompany agreement) related to such creditor's claim.

In certain instances, a Debtor may be a co-obligor, co-mortgagor, or guarantor with respect to scheduled claims of other Debtors. No claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are or may be otherwise satisfied or discharged.

Schedule D does not include beneficiaries of letters of credit. Although the claims of these parties may be secured by a letter of credit, the Debtors' obligations under the letters of credit run to the issuers thereof, and not to the beneficiaries thereof.

The descriptions provided in Schedule D are intended only to be a summary. Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent and priority of any liens. Nothing in these Global Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements or documents.

Except as specifically stated herein, real property lessors, utility companies, and other parties which may hold security deposits have not been listed on Schedule D. The Debtors did not include parties that may believe their claims are secured through setoff rights or inchoate statutory lien rights. Certain of the leases of aircraft listed on Schedule G are listed on the Debtors' financial statements as secured capital leases. This designation is solely for accounting purposes, and the Debtors treat these leases as operating leases in the ordinary course of their business. Accordingly, these leases have been listed on Schedule G rather than Schedule D.

Detailed descriptions of the Debtors' prepetition debt structure and descriptions of collateral relating to the debt contained on Schedule D are contained in the *Motion of Debtors for Entry of Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 363, 364, 503, 506, 507, and 552, (I) Authorizing the Debtors, Upon Entry of the Final Order, to Obtain Senior Secured Superpriority Post-Petition Financing, (II) Authorizing the Debtors' Use of Any Cash Collateral, (III) Providing Adequate Protection to Prepetition Secured Parties, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [ECF No. 22] and the *Declaration of Fred Cromer in Support of the Chapter 11 Proceedings and First Day Pleadings* [ECF No. 2].

10.    **Schedule E/F – Creditors Who Hold Unsecured Claims**. Schedule E/F does not include certain deferred charges, deferred liabilities, accruals (other than those noted herein), or general reserves. Such amounts are, however, reflected on the Debtors' books and records as required in accordance with GAAP. Such accruals are general estimates of liabilities and do not represent specific claims as of the Petition Date. The Debtors used reasonable efforts to include as contingent, unliquidated, or disputed the claim of any vendor not included on the Debtors' open accounts payable that is associated with an account that has an accrual or receipt not invoiced. Schedule E/F includes certain trade payable claims representing accrued liabilities as of the Petition Date. Such accrued claims are listed at undetermined amounts because the Debtors' record-keeping practices only identify such accounts payable as prepetition or post-petition claims upon ultimate payment of the related invoices (*i.e.*, the accrued amounts are not yet broken down between prepetition vs. post-petition).

(a)    *Part 1 – Creditors with Priority Unsecured Claims*. The listing of a claim on Schedule E/F, Part 1, does not constitute an admission by the Debtors that such claim or any portion thereof is entitled to priority treatment under section 507 of the Bankruptcy

Code.  The Debtors reserve all of their rights to dispute the amount and the priority status of any claim on any basis at any time.

Pursuant to the *Final Order Authorizing (I) the Debtors to Pay Certain Prepetition Taxes, Governmental Assessments, and Fees and (II) Financial Institutions to Honor and Process Related Checks and Transfers* [ECF No. 263] (the "**Final Taxes Order**"), the Bankruptcy Court authorized the Debtors to pay certain tax liabilities that accrued prepetition.  Accordingly, any unsecured priority claims based upon prepetition tax accruals that have been paid or may be paid pursuant to the Final Taxes Order or pursuant to any other Bankruptcy Court order are not listed in Schedule E.  The Debtors believe that any undisputed tax claims for prepetition amounts, whether allowable as a priority or nonpriority claim have been or will be satisfied.

Moreover, in lieu of listing all of the Debtors' possible taxing authorities for notice purposes in Schedule E/F, the Debtors only listed those taxing authorities with which the Debtors have pending audits.  A more fulsome list is attached to the motion which sought entry of the Taxes Order [ECF No. 13].

The listing of a claim on Schedule E/F, Part 1, does not constitute an admission by the Debtors that such claim or any portion thereof is entitled to priority status.

Pursuant to the *Final Order Authorizing (I) the Debtors to (A) Honor Prepetition Employee Obligations and (B) Maintain Employee Benefits Programs and Pay Related Administrative Obligations, (II) Current and Former Employees to Proceed With Outstanding Workers' Compensation Claims, and (III) Financial Institutions to Honor and Process Related Checks and Transfers* [ECF No. 265] (the "**Final Wages Order**"), the Bankruptcy Court authorized the Debtors to pay certain prepetition obligations, including obligations related to employee wages and other employee benefits, in the ordinary course of business.  Accordingly, no undisputed, prepetition claims of non-insiders related to employee wages and other employee benefits that have been paid or may be paid pursuant to the Final Wages Order or pursuant to any other Bankruptcy Court order is listed in Schedule E/F Part 1.

(b) *Part 2 – Creditors with Nonpriority Unsecured Claims*.  The liabilities identified in Schedule E/F, Part 2, are derived from the Debtors' books and records.  The Debtors made a commercially reasonable effort to set forth their unsecured obligations, although the actual amount of claims against the Debtors may vary from those liabilities represented on Schedule E/F, Part 2.  The listed liabilities may not reflect the correct amount of any unsecured creditor's allowed claims or the correct amount of all unsecured claims.

The Debtors generally allocate individual liabilities to particular Debtors.  However, in certain cases, it would be a time-consuming and inefficient use of estate resources, or impracticable, to assign a given liability to a particular Debtor based on a contractual obligation.  Instead, the Schedules reflect the liability based on the Debtors' books and records.

Schedule E/F, Part 2 (Statements Part 3, Question 7), contains information regarding threatened or pending litigation involving the Debtors. The amounts for these threatened or pending claims are listed as "undetermined" and are marked as contingent, unliquidated, and disputed in the Schedules and Statements. The Debtors did not list workers' compensation claims on Schedule E/F.

Schedule E/F, Part 2, reflects certain prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption or assumption and assignment of an executory contract or unexpired lease. In addition, Schedule E/F, Part 2, does not include claims that may arise in connection with the rejection of any executory contracts or unexpired leases, if any, that may be rejected in these chapter 11 cases.

Schedule E/F, Part 2, reflects certain prepetition amounts owing to beneficiaries under the Company's non-qualified retirement arrangements. Such amounts are based on the Company's most recent actuarial calculation of the applicable defined benefit (for defined benefit arrangements) or the most recent balance of the applicable account (for defined contribution arrangements).

In many cases, the claims listed on Schedule E/F, Part 2, arose, accrued, or were incurred on various dates or on a date or dates that are unknown to the Debtors or are subject to dispute. Where the determination of the date on which a claim arose, accrued, or was incurred would be unduly burdensome and costly to the Debtors' estates, the Debtors did not list a specific date or dates for such claim.

As of the time of filing the Schedules and Statements, the Debtors may not have received all invoices for payables, expenses, and other liabilities that may have accrued prior to the Petition Date. The Debtors reserve all rights to amend Schedules D and E/F if and as they deem necessary or appropriate.

Liabilities listed on Schedule E/F reflect the Debtors' books and records balance as of the Petition Date. The Debtors used reasonable efforts to <u>exclude</u> any prepetition amounts paid pursuant to orders entered by the Bankruptcy Court; however, certain of these claims may be listed on Schedule E/F, and the Debtors reserve all rights with respect thereto. The Debtors expect that certain suppliers may continue to receive payments on account of prepetition amounts through the pendency of the Chapter 11 Cases (subject to Bankruptcy Court approval, if needed). Moreover, certain vendors are also customers, and the amounts are netted monthly; therefore, the Debtors listed these liabilities with an unliquidated flag.

Schedule E/F, Part 2, reflects certain intercompany payables and receivables with an undetermined value. The Debtors are not required to assign a value to these receivables pursuant to GAAP or the provisions of applicable securities laws. Accordingly, their amounts are not readily determinable. Cash transfers between certain Debtors are reflected in the Statements, Part 2, Question 4.

11.    **Schedule G – Executory Contracts and Unexpired Leases**.  Listing or omitting an agreement, contract, document, or other instrument on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease, that it was in effect on the Petition Date, or that it is valid or enforceable.  The Debtors reserve all rights to dispute the validity, status, or enforceability of any contracts, leases, agreements, or other instruments (whether or not set forth on Schedule G) and to amend or supplement Schedule G as they deem necessary or appropriate.  Certain leases and contracts listed on Schedule G may contain renewal options, guarantees of payment, indemnifications, options to purchase, rights of first refusal, and other miscellaneous rights.  Such rights, powers, duties, and obligations are not set forth separately on Schedule G.  The Debtors expressly reserve the right to assert that any instrument listed on Schedule G is or is not an executory contract within the meaning of section 365 of the Bankruptcy Code.  In addition, the Debtors may have entered into certain confidentiality and non-compete agreements or various other types of agreements in the ordinary course of their businesses, such as supplemental agreements and letter agreements, which documents may not be set forth in Schedule G.  The Debtors reserve all rights with respect to all agreements.

The Debtors reserve all rights, claims, and causes of action with respect to claims associated with any contracts and agreements listed on Schedule G, including the right to dispute or challenge the characterization, nature, or structure of any transaction, agreement, contract, document, or other instrument (including any intercompany agreement), or any claims related thereto.

The instruments listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda, and other documents, instruments, and agreements that may not be listed therein despite the Debtors' reasonable efforts to identify such documents.

Certain of the aircraft leases listed on Schedule G are listed on the Debtors' financial statements as secured capital leases.  This designation is solely for accounting purposes, and the Debtors treat these leases as operating leases in the ordinary course of their business.  Accordingly, these leases have been listed on Schedule G rather than Schedule D.

Unless otherwise specified on Schedule G, each executory contract or unexpired lease listed thereon shall include all exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without respect to whether such agreement, instrument, or other document is listed thereon.  In some cases, the same supplier or provider may appear multiple times in Schedule G.  Multiple listings, if any, reflect distinct agreements between the applicable Debtor and such supplier or provider.

The Debtors omitted employee form offer letters and non-compete agreements that each employee must execute in order to be employed by the Debtors from Schedule G.  The Debtors used reasonable efforts to include all insurance policies on Schedule G for which they are a beneficiary.

In some cases, contract counterparties from dormant legacy businesses and historical acquisitions may not have been updated to reflect assignment to active Debtor entities although the Debtors have assumed and continue to perform under the terms and conditions of such agreements (as amended, if applicable).  In such cases, the Debtors included such items on Schedule G of the Debtor entity that performs the terms and conditions of such agreements as of the Petition Date.

Certain Debtors are guarantors and parties to guaranty agreements regarding the Debtors' prepetition notes.  The guaranty obligations arising under these agreements are reflected on Schedules D and F only.

12.  **Schedule H – Co-Debtors**.  In the ordinary course of their businesses, certain Debtors may pay certain expenses for and on behalf of their affiliates.  For purposes of Schedule H, the Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements. Further, certain of the guarantees reflected on Schedule H may have expired or may no longer be enforceable.

The Debtors did not list any litigation-related co-Debtors on Schedule H.  Instead, all such listings can be found on Schedule E/F.

## Specific Notes and Disclosures Regarding the Statements

1.  **Statements, Part 1, Question 2 – Non-Business Revenue**.  Non-business revenue includes such items as capitalized interest, interest income, and gains on the extinguishment of debt, as consistent with the Debtors' financial statements.

2.  **Statements, Part 2, Question 3 – Certain payments or transfers to creditors within 90 days before filing this case**.  Any payments made to the Debtors' bankruptcy case professionals and/or insiders within the 90 days prior to the Petition Date are disclosed in response to SOFA 11 and SOFA 30, respectively, and therefore are not listed in response to SOFA 3. Payments made to the Debtors' non-insider employees also are not listed herein.  Payments made to employees for compensation are not included; however, transfers made to third-party administrators used to compensate employees were included.  Moreover, due to the Debtors' historical reporting practices, the clearing dates for certain transactions may reflect the date the transaction was entered rather than the date the cash cleared the Debtors' account.

3.  **Statements, Part 2, Question 4 – Payments or other transfers of property made within 1 year before filing this case that benefited any insider**.  The information reported on Question 4 is representative of the total payments made to insiders on behalf of the Debtor entities during the year prior to the Petition Date.  For the avoidance of doubt, the information reported on Question 4 may include payments to individuals who may have been insiders at the time of payment but are no longer employed in such capacity by a Debtor.  The Debtors listed intercompany cash transfers on a net basis for the period between November 18, 2023 and November 17, 2024.

The information reported on Question 4 includes certain payments made to Walkers Fiduciary Limited ("**Walkers Fiduciary**") on account of independent director services provided

by Gennie Bigord.  Ms. Bigord serves as an independent member of the Boards of Directors of the Cayman Debtors and is a Senior Vice President of Walkers Fiduciary.  Ms. Bigord was not paid directly by the Debtors.

The information reported on Question 4 also includes certain payments made to potential insiders on account of the now-terminated proposed merger between the Debtors and JetBlue.  Specifically, certain individuals who may have been insiders received (a) contractually mandated payments under the merger documents (denoted on the response to Question 4 as "Merger Retention Payments") and (b) their respective share of dividends payable to all holders of common equity in Debtor Spirit Airlines, Inc. related to such proposed merger (denoted on the response to Question 4 as "Jet Blue Merger Payments").

4.      **Statements, Part 2, Question 6 – Setoffs**.  For a discussion of setoffs and nettings incurred by the Debtors, refer to ¶ 31 above.

5.      **Statements, Part 3, Question 7 – Legal Actions**.  Due to the nature of their businesses, the Debtors receive numerous customer complaints and are sometimes subject to actual or threatened small claims litigation.  The Debtors omitted such customer demands and certain small claims litigation from the Statements.  The Debtors did not list workers' compensation claims in response to Question 7.

6.      **Statements, Part 6, Question 11 – Payments Related to Bankruptcy**.  Certain disbursements listed in Question 11 reflect payments to professionals made by a certain Debtor entity, but may be subject to applicable allocation amongst the Debtors.  The Debtors listed payments made to professionals retained by the Debtors but not payments made to advisors of their post-petition lenders or other parties on account of any applicable fee arrangements.  For the avoidance of doubt, many of these payments were not made in contemplation of the Chapter 11 Cases, and may include amounts unrelated to financial restructuring.

7.      **Statements, Part 11, Question 20 – Off-Premises Storage**.  Due to the nature of the Debtors' businesses, they maintain several off-premises storage sites.  Various personnel of the Debtors have access to these storage sites and the individuals with access may change from time to time.  Accordingly, the Debtors did not list each such individual on Statement 21.

8.      **Statements, Part 11, Question 21 – Property Held for Another**.  Due to the nature of the Debtors' businesses, they are in possession of property of other individuals or entities in the form of aircraft and equipment parts.  This property is held by the Debtors and moved between locations, including warehouses and repair stations, in a manner such that a report regarding its location at any moment in time would become obsolete immediately, and updating such record would impose an unreasonable administrative burden on the Debtors.  Accordingly, the location of such property has been reported as "Various" on the Statements.

9.      **Statements, Part 12, Questions 22-24 – Details about Environmental Information**.  The Debtors endeavored to disclose all applicable information in response to Statements, Part 12, Questions 22–24.

10.     **Statements, Part 13, Question 26 – Books, Records, and Financial Statements**.  Pursuant to the requirements of the Securities Exchange Act of 1934, as amended, at the end of

each of its fiscal quarters and years and upon the occurrence of events requiring disclosure on Form 8-K, Debtor Spirit Airlines, Inc. prepares and files (or furnishes, as applicable) with the Securities and Exchange Commission (the "**SEC**") Quarterly Reports on Form 10-Q, Annual Reports on Form 10-K, and Current Reports on Form 8-K, among other filings made with the SEC from time to time (collectively, the "**SEC Filings**").  Certain of Spirit Airlines, Inc.'s SEC Filings contain consolidated financial statements relating to the Debtors.  Additionally, Spirit Airlines, Inc. has historically provided the SEC Filings in the investor relations section of its website.  Because the SEC Filings are of public record, Spirit Airlines, Inc. does not maintain records of the parties who requested or obtained copies of any of the SEC Filings from the SEC, the Debtors, or other sources.

11.      **Statements, Part 13, Question 27 – Inventories**.  The Debtors inventory product at their various locations on a regular basis.  In an effort to reduce the amount of disclosures that would be otherwise applicable, the Debtors only listed their last two inventories, dated as July 10, 2023 and June 21, 2024, respectively.

12.      **Statements, Part 13, Question 28 – Current Partners, Officers, Directors, and Shareholders**.  With respect to Debtors' ownership of other Debtors, the Debtors listed only entities that are direct owners of other Debtors as of the Petition Date.

13.      **Statements, Part 13, Question 30 – Payments, Distributions, or Withdrawals Credited or Given to Insiders**.  Please refer to Question 4 regarding all payments to insiders.

**Fill in this information to identify the case:**

Debtor name    Spirit IP Cayman Ltd.

United States Bankruptcy Court for the:    Southern District of New York

Case number (If known)    24-12040 (SHL)

☐ Check if this is an amended filing

## Official Form 207

# Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

04/22

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

### Part 1:    Income

1. **Gross revenue from business**

   ☑ None

   | **Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year** | | | **Sources of revenue** Check all that apply | **Gross revenue** (before deductions and exclusions) |
   |---|---|---|---|---|
   | **From the beginning of the fiscal year to filing date:** | From _____ MM/DD/YYYY | to _____ | ☐ Operating a business ☐ Other _____ | $ _____ |
   | **For prior year:** | From _____ MM/DD/YYYY | to _____ MM/DD/YYYY | ☐ Operating a business ☐ Other _____ | $ _____ |
   | **For the year before that:** | From _____ MM/DD/YYYY | to _____ MM/DD/YYYY | ☐ Operating a business ☐ Other _____ | $ _____ |

2. **Non-business revenue**

   Include revenue regardless of whether that revenue is taxable. Non-business income may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

   ☑ None

   | | | | **Description of sources of revenue** | **Gross revenue from each source** (before deductions and exclusions) |
   |---|---|---|---|---|
   | **From the beginning of the fiscal year to filing date:** | From _____ MM/DD/YYYY | to _____ | _____ | $ _____ |
   | **For prior year:** | From _____ MM/DD/YYYY | to _____ MM/DD/YYYY | _____ | $ _____ |
   | **For the year before that:** | From _____ MM/DD/YYYY | to _____ MM/DD/YYYY | _____ | $ _____ |

| Debtor | Spirit IP Cayman Ltd. | Case number (If known) | 24-12040 (SHL) |
|---|---|---|---|
| | Name | | |

## Part 2: List Certain Transfers Made Before Filing for Bankruptcy

**3. Certain payments or transfers to creditors within 90 days before filing this case**

List payments or transfers including expense reimbursements to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $7, 575. (This amount may be adjusted on 4/01/2025 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☒ None

| Creditor's name and address | Dates | Total amount or value | Reasons for payment or transfer Check all that apply |
|---|---|---|---|
| 3.1 _____ Street _____ City ___ State ___ Zip Code | _____ | $ _____ | ☐ Secured debt ☐ Unsecured loan repayments ☐ Suppliers or vendors ☐ Services ☐ Other _____ |
| 3.2 _____ Street _____ City ___ State ___ Zip Code | _____ | $ _____ | ☐ Secured debt ☐ Unsecured loan repayments ☐ Suppliers or vendors ☐ Services ☐ Other _____ |

**4. Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7, 575. (This amount may be adjusted on 4/01/2025 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☐ None    **See Attached Rider**

| Insider's name and address | Dates | Total amount or value | Reasons for payment or transfer |
|---|---|---|---|
| 4.1 _____ Street _____ City ___ State ___ Zip Code | _____ | $ _____ | _____ _____ |
| **Relationship to debtor** _____ | | | |
| 4.2 _____ Street _____ City ___ State ___ Zip Code | _____ | $ _____ | _____ _____ |
| **Relationship to debtor** _____ | | | |

| Debtor | Spirit IP Cayman Ltd. | Case number (If known) | 24-12040 (SHL) |
|---|---|---|---|
| | Name | | |

## 5. Repossessions, foreclosures, and returns

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

☑ None

| | Creditor's name and address | Description of the property | Date | Value of property |
|---|---|---|---|---|
| 5.1 | | | | $ |
| | Street | | | |
| | City        State        Zip Code | | | |
| 5.2 | | | | $ |
| | Street | | | |
| | City        State        Zip Code | | | |

## 6. Setoffs

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|
| | | | $ |
| Street | | | |
| City        State        Zip Code | | | |

Last 4 digits of account number: XXXX - _____

---

| Part 3: | Legal Actions or Assignments |
|---|---|

## 7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity-within 1 year before filing this case.

☑ None

| | Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| 7.1 | | | | ☐ Pending |
| | | | Street | ☐ On appeal |
| | Case number | | City        State        Zip Code | ☐ Concluded |
| 7.2 | | | | ☐ Pending |
| | | | Street | ☐ On appeal |
| | Case number | | City        State        Zip Code | ☐ Concluded |

---

Debtor    Spirit IP Cayman Ltd.    Case number (If known)    24-12040 (SHL)
         Name

**8. Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

| Custodian's name and address | Description of the property | Value |
|---|---|---|
| | | $ _____ |
| _____ | _____ | |
| Street | **Case title** | **Court name and address** |
| _____ | _____ | |
| City          State          Zip Code | **Case number** | |
| | _____ | |
| | **Date of order or assignment** | |
| | _____ | |

---

**Part 4:    Certain Gifts and Charitable Contributions**

**9.** List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000

☑ None

| | Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|---|
| 9.1 | _____ | _____ | _____ | $ _____ |
| | Street | _____ | | |
| | City          State          Zip Code | | | |
| | **Recipient's relationship to debtor** | | | |
| | _____ | | | |
| 9.2 | _____ | _____ | _____ | $ _____ |
| | Street | | | |
| | City          State          Zip Code | | | |
| | **Recipient's relationship to debtor** | | | |
| | _____ | | | |

---

**Part 5:    Certain Losses**

**10.** All losses from fire, theft, or other casualty within 1 year before filing this case.

☑ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br>List unpaid claims on Official Form 106A/B (Schedule A/B: Assets - Real and Personal Property). | Date of loss | Value of property lost |
|---|---|---|---|
| _____ | _____ | _____ | $ _____ |

| Debtor | Spirit IP Cayman Ltd. | Case number (if known) | 24-12040 (SHL) |
|---|---|---|---|
| | Name | | |

## Part 6:    Certain Payments or Transfers

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☑ None

| Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|
| 11.1 | | | $ |

**Address**

_____
Street

_____
City            State        Zip Code

**Email or website address**

_____

**Who made the payment, if not debtor?**

_____

| Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|
| 11.2 | | | $ |

**Address**

_____
Street

_____
City            State        Zip Code

**Email or website address**

_____

**Who made the payment, if not debtor?**

_____

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.

Do not include transfers already listed on this statement.

☑ None

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|
| | | | $ |

**Trustee**

_____

| Debtor | Spirit IP Cayman Ltd. | Case number (If known) | 24-12040 (SHL) |
|---|---|---|---|
| | Name | | |

### 13. Transfers not already listed on this statement

List any transfers of money or other property-by sale, trade, or any other means-made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None

| | Who received transfer? | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|---|
| 13.1 | | | | $ |

**Address**

Street

City        State        Zip Code

**Relationship to debtor**

| | Who received transfer? | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|---|
| 13.2 | | | | $ |

**Address**

Street

City        State        Zip Code

**Relationship to debtor**

### Part 7:    Previous Locations

### 14. Previous addresses

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☐ Does not apply

| | Address | Dates of Occupancy | |
|---|---|---|---|
| 14.1 | 2800 EXECUTIVE WAY MIRAMAR, FL 33025 | From 2020 | To 2024 |
| 14.2 | | From | To |

Debtor    Spirit IP Cayman Ltd.                                    Case number (If known)    24-12040 (SHL)
          Name

---

## Part 8:    Health Care Bankruptcies

**15. Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|
| 15.1 _____ | _____ | _____ |
| Street _____ | | |
| City _____ State ___ Zip Code ____ | **Location where patient records are maintained** (if different from facility address). If electronic, identify any service provider. | **How are records kept?** |
| | _____ | *Check all that apply:* |
| | _____ | ☐ Electronically |
| | | ☐ Paper |

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|
| 15.2 _____ | _____ | _____ |
| Street _____ | | |
| City _____ State ___ Zip Code ____ | **Location where patient records are maintained** (if different from facility address). If electronic, identify any service provider. | **How are records kept?** |
| | _____ | *Check all that apply:* |
| | _____ | ☐ Electronically |
| | | ☐ Paper |

---

## Part 9:    Personally Identifiable Information

**16. Does the debtor collect and retain personally identifiable information of customers?**

☐ No.
☑ Yes. State the nature of the information collected and retained.        Name, demographic information, contact information, payment information, location services, website and app interactions

Does the debtor have a privacy policy about that information?
☐ No
☑ Yes

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.
Yes. Does the debtor serve as plan administrator?

☐ No. Go to Part 10.
☐ Yes. Fill in below

| Name of plan | Employer identification number of the plan |
|---|---|
| _____ | EIN: _____ |

Has the plan been terminated?
☐ No
☐ Yes

---

| Debtor | Spirit IP Cayman Ltd. | | Case number (If known) | 24-12040 (SHL) |
|---|---|---|---|---|
| | Name | | | |

## Part 10: Certain Financial Accounts, Safe Deposit Boxes, and Storage Units

**18. Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, old, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| | Financial institution name and address | Last 4 digits of account number | Type of account | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|---|
| 18.1 | _____ <br> Street _____ <br> City  State  Zip Code | XXXX- _____ | ☐ Checking <br> ☐ Savings <br> ☐ Money Market <br> ☐ Brokerage <br> ☐ Other _____ | _____ | $ _____ |
| 18.2 | _____ <br> Street _____ <br> City  State  Zip Code | XXXX- _____ | ☐ Checking <br> ☐ Savings <br> ☐ Money Market <br> ☐ Brokerage <br> ☐ Other _____ | _____ | $ _____ |

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository institution name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| _____ <br> Street _____ <br> City  State  Zip Code | _____ <br><br> Address _____ <br> _____ <br> _____ | _____ | ☐ No <br> ☐ Yes |

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| _____ <br> Street _____ <br> City  State  Zip Code | _____ <br><br> Address _____ <br> _____ <br> _____ | _____ | ☐ No <br> ☐ Yes |

| Debtor | Spirit IP Cayman Ltd. | Case number (If known) | 24-12040 (SHL) |
|---|---|---|---|
| | Name | | |

## Part 11:  Property the Debtor Holds or Controls That the Debtor Does Not Own

**21.  Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None

| Owner's name and address | Location of the property | Description of the property | Value |
|---|---|---|---|
| | | | $ |
| Street | | | |
| City          State          Zip Code | | | |

## Part 12:  Details About Environmental Information

For the purpose of Part 12, the following definitions apply:

■ *Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

■ *Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

■ *Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

22.  **Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders.

☑ No
☐ Yes. Provide details below.

| Case title | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|
| | | | ☐ Pending |
| **Case Number** | Street | | ☐ On appeal |
| | City          State          Zip Code | | ☐ Concluded |

23.  **Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☑ No
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| | | | |
| Street | Street | | |
| City          State          Zip Code | City          State          Zip Code | | |

| Debtor | Spirit IP Cayman Ltd. | Case number (If known) | 24-12040 (SHL) |
|---|---|---|---|
| | Name | | |

24. **Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No

☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| Street | Street | | |
| _____ | _____ | | |
| City        State        Zip Code | City        State        Zip Code | | |

---

**Part 13:    Details About the Debtor's Business or Connections to Any Business**

25. **Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☑ None

| Business name and address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|
| 25.1 _____ | _____ | EIN: _____ |
| Street _____ | _____ | **Dates business existed** |
| City      State      Zip Code | | From _____  To _____ |

| Business name and address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|
| 25.2 _____ | _____ | EIN: _____ |
| Street _____ | _____ | **Dates business existed** |
| City      State      Zip Code | | From _____  To _____ |

| Business name and address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|
| 25.3 _____ | _____ | EIN: _____ |
| Street _____ | _____ | **Dates business existed** |
| City      State      Zip Code | | From _____  To _____ |

| Debtor | Spirit IP Cayman Ltd. | Case number (If known) | 24-12040 (SHL) |
|---|---|---|---|
| | Name | | |

## 26. Books, records, and financial statements

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None    **See Attached Rider**

| Name and address | Dates of service |
|---|---|
| **26a.1** _____ | From _____ To _____ |
| Street _____ | |
| City          State          Zip Code | |

| Name and address | Dates of service |
|---|---|
| **26a.2** _____ | From _____ To _____ |
| Street _____ | |
| City          State          Zip Code | |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and address | Dates of service |
|---|---|
| **26b.1** ERNST & YOUNG LLP<br>PO BOX 933514<br>ATLANTA, GA 31193-3514 | From 2020    To Present |

| Name and address | Dates of service |
|---|---|
| **26b.2** | From _____ To _____ |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None    **See Attached Rider**

| Name and address | if any books of account and records are unavailable, explain why |
|---|---|
| **26c.1** _____ | _____ |
| Street _____ | _____ |
| City          State          Zip Code | |

| Official Form 207 | **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy** | Page 11 |
|---|---|---|

| Debtor | Spirit IP Cayman Ltd. | Case number (If known) | 24-12040 (SHL) |
|---|---|---|---|
| | Name | | |

| Name and address | if any books of account and records are unavailable, explain why |
|---|---|

26c.2 _____          _____
       _____          _____
       Street
       _____
       City              State              Zip Code

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None   **See Attached Rider**

| Name and address |
|---|

26d.1 _____
       _____
       Street
       _____
       City              State              Zip Code

| Name and address |
|---|

26d.2 _____
       _____
       Street
       _____
       City              State              Zip Code

27. **Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No

☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|
| _____ | _____ | $ _____ |

| Name and address of the person who has possession of inventory records | | |
|---|---|---|

27.1 _____
      _____
      Street
      _____
      City              State              Zip Code

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|
| | | $ |

| Name and address of the person who has possession of inventory records | | |
|---|---|---|
| 27.2 | | |

Street

City                                        State                                 Zip Code

28. **List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **See Attached Rider** | | | |
| | | | |
| | | | |
| | | | |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No

☑ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **See Attached Rider** | | | From ____ To ____ |
| | | | From ____ To ____ |
| | | | From ____ To ____ |
| | | | From ____ To ____ |

30. **Payments, distributions, or withdrawals credited or given to insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No

☐ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|
| 30.1 **Refer to SOFA Question 4** | | | |

Street

City                           State                           Zip Code

| Relationship to debtor |
|---|

Debtor    Spirit IP Cayman Ltd.                                                    Case number (If known)    24-12040 (SHL)
          Name

| | Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|---|
| 30.2 | | | | |
| | Street | | | |
| | City                State            Zip Code | | | |

| Relationship to debtor |
|---|

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ No
☑ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|
| Spirit Airlines, Inc. | EIN: 38-1747023 |

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No
☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the pension fund |
|---|---|
| | EIN: |

## Part 14:    Signature and Declaration

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    01/02/2025
               MM / DD / YYYY

**X** /s/ Fred Cromer                                            Printed name    Fred Cromer
Signature of individual signing on behalf of the debtor

Position or relationship to debtor    Chief Financial Officer

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**

☐ No
☑ Yes

Debtor Name:  Spirit IP Cayman Ltd.

Case Number:  24-12040 (SHL)

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 4:** Payments or other transfers of property made within 1 year before filing this case that benefited any insider

| Insider's Name and Address | Relationship to Debtor | Total Amount or Value | Dates | Reason for Payment or Transfer |
|---|---|---|---|---|
| Spirit Finance Cayman 2 Ltd.<br>1731 Radiant Dr<br>Dania Beach, FL 33004 | Affiliate | $19,225.77 | 1/18/2024 | Intercompany Transfer |
| Spirit Finance Cayman 2 Ltd.<br>1731 Radiant Dr<br>Dania Beach, FL 33004 | Affiliate | $9,426.00 | 4/18/2024 | Intercompany Transfer |
| Spirit Finance Cayman 2 Ltd.<br>1731 Radiant Dr<br>Dania Beach, FL 33004 | Affiliate | $8,901.94 | 10/17/2024 | Intercompany Transfer |
| Spirit Loyalty Cayman Ltd.<br>1731 Radiant Dr<br>Dania Beach, FL 33004 | Affiliate | $67,911,191.71 | 12/13/2023 | Intercompany Transfer |
| Spirit Loyalty Cayman Ltd.<br>1731 Radiant Dr<br>Dania Beach, FL 33004 | Affiliate | $67,031,906.71 | 3/13/2024 | Intercompany Transfer |
| Spirit Loyalty Cayman Ltd.<br>1731 Radiant Dr<br>Dania Beach, FL 33004 | Affiliate | $65,978,900.00 | 6/20/2024 | Intercompany Transfer |
| Spirit Loyalty Cayman Ltd.<br>1731 Radiant Dr<br>Dania Beach, FL 33004 | Affiliate | $64,112,125.88 | 9/11/2024 | Intercompany Transfer |

Debtor Name:  Spirit IP Cayman Ltd.

Case Number:  24-12040 (SHL)

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 26a:** List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

| Name and Address | From | To |
|---|---|---|
| CROMER, FREDERICK S.<br>1731 RADIANT DR.<br>DANIA BEACH, FL 33004 | 07/2024 | Present |
| HARALSON, SCOTT<br>1731 RADIANT DR.<br>DANIA BEACH, FL 33004 | 08/2020 | 06/2024 |
| MCMENAMY, BRIAN J.<br>1731 RADIANT DR.<br>DANIA BEACH, FL 33004 | 08/2020 | Present |
| MOLINA, GRISELLE<br>1731 RADIANT DR.<br>DANIA BEACH, FL 33004 | 06/2024 | Present |

Debtor Name:  Spirit IP Cayman Ltd.

Case Number:  24-12040 (SHL)

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 26c:** Firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

| Name and Address | If unavailable, why? |
|---|---|
| CROMER, FREDERICK S.<br>1731 RADIANT DR.<br>DANIA BEACH, FL 33004 | |
| MCMENAMY, BRIAN J.<br>1731 RADIANT DR.<br>DANIA BEACH, FL 33004 | |
| MOLINA, GRISELLE<br>1731 RADIANT DR.<br>DANIA BEACH, FL 33004 | |

Debtor Name:  Spirit IP Cayman Ltd.                                                                    Case Number:  24-12040 (SHL)

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 26d:** List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issues a financial statement within 2 years before filing this case.

| Name and Address |
| --- |
| |

Pursuant to the requirements of the Securities Exchange Act of 1934, as amended, Spirit Airlines, Inc. has filed with the U.S. Securities and Exchange Commission (the "SEC") reports on Form 8-K, Form 10-Q, and Form 10-K. These SEC filings contain consolidated financial information relating to the Debtors. Additionally, consolidated financial information for the Debtors is posted on the company's website at https://ir.spirit.com/overview/default.aspx. Because the SEC filings and the website are of public record, the Debtors do not maintain records of the parties that requested or obtained copies of any of the SEC filings from the SEC or the Debtors.

In addition, in the ordinary course of business, the Debtors provide certain parties, such as financial institutions, investment banks, debtholders, auditors, potential investors, vendors, and financial advisors, financial statements that may not be part of a public filing. The Debtors do not maintain complete lists to track such disclosures. As such, the Debtors have not provided lists of these parties in response to this question.

Debtor Name:  Spirit IP Cayman Ltd.                                                                Case Number:  24-12040 (SHL)

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 28:** List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.

| Name | Address | Position | % Interest |
|------|---------|----------|------------|
| BIGORD, GENNIE | WALKERS FIDUCIARY LIMITED<br>190 ELGIN AVENUE<br>GEORGETOWN<br>GRAND CAYMAN, KY1-1104 CAYMAN ISLANDS | Director (Cayman Debtors) | Less than 1% |
| CANFIELD, THOMAS C. | 1731 RADIANT DR.<br>DANIA BEACH, FL 33004 | Director (Cayman Debtors) | Less than 1% |
| CROMER, FREDERICK S. | 1731 RADIANT DR.<br>DANIA BEACH, FL 33004 | Director (Cayman Debtors) | Less than 1% |
| SPIRIT FINANCE CAYMAN 2 LTD. | 1731 RADIANT DR.<br>DANIA BEACH, FL 33004 | Controlling Shareholder | 100% |

Debtor Name:  Spirit IP Cayman Ltd.                                                                            Case Number:  24-12040 (SHL)

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 29:** Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?

| Name | Address | Position | Start | End |
|------|---------|----------|-------|-----|
| HARALSON, SCOTT | 1731 RADIANT DR. DANIA BEACH, FL 33004 | Former Director (Cayman Debtors) | 08/27/20 | 11/21/24 |
| GORE, SIMON C. | 1731 RADIANT DR. DANIA BEACH, FL 33004 | Former Director (Cayman Debtors) | 08/27/20 | 12/05/24 |